IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA


T.B. and K.B., individually and on behalf
of C.B., a minor,

      CASE NO.:

      Plaintiffs,

v.

BROWARD COUNTY SCHOOL BOARD,

      Defendant.
_____/

## COMPLAINT AND JURY DEMAND

COME NOW the plaintiffs, T.B. and K.B., individually and on behalf of C.B., a minor, by and through the undersigned counsel and hereby allege as follows:

## PARTIES

1. The plaintiff, T.B., is an individual, sui juris, who resided in Broward County, Florida, at all times relevant.

2. The plaintiff, K.B, in an individual, sui juris, who resided in Broward County, Florida, at all times relevant.

3. The plaintiffs, C.B., is a minor who has resided in Broward County, Florida, at all times relevant.

4. The Defendant, BROWARD COUNTY SCHOOL BOARD, ("Board" or "District") is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Broward County Public Schools ("BCPS.")

1

5.  The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

## JURISDICTION AND VENUE

6.  Jurisdiction for this action vests pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Individuals with Disabilities Act, 20 U.S.C. § 1400 et seq. ("IDEA") and 42 U.S.C. §§ 1983 & 1988 for violations of T.B., K.B., and C.B.'s civil rights; and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

7.  Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that the Board resides in the judicial district and the cause of action accrued in the judicial district.

## GENERAL ALLEGATIONS

8.  BCPS receives state and federal funding for education.

9.  T.B. and K.B. are the natural parents ("parents") of C.B.

10. C.B. has been identified as having the following disabilities:

    a.  High Functioning Autism (Asperger's Disorder) (ASD)

    b.  Attention Deficit Attention Disorder (ADHD)

    c.  Oppositional Defiant Disorder (ODD)

11. BCPS has identified C.B. as a student entitled to received exceptional student education (ESE) services due to his disabilities.

12. C.B. became eligible for ESE services under the category of ASD in 2012 and eligibility remains the same to date.

13. C.B. has had behaviors in school since Kindergarten.  His behaviors have remained consistent with a predictable patter of escalation since Kindergarten.

14. His Kindergarten teacher was able to manage these behaviors in a general education classroom.

15. When C.B. entered first grade (2014-2015 school year), he was immediately disciplined for the same behaviors.  His first grade teacher was not able to manage his behaviors in the classroom.  Rather than request additional support or services, C.B. was removed from the classroom and disciplined.

16. C.B. was in a school of choice – magnet program.  The school immediately began a predetermined process of changing C.B.'s eligibility from Autism Spectrum Disorder (ASD) to Emotional Behavioral Disability (EBD) with the ultimate goal of removing C.B. from the choice program into a more restrictive EBD cluster classroom. Because the choice school did not have any EBD cluster classrooms, a change in placement into an EBD cluster classroom would result in the immediately removal of C.B. from their school.

17. By February 2015, the school had changed eligibility to EBD and by April 2015, the school had changed placement into an EBD cluster classroom and as a result C.B. was immediately removed from the school.

18. In May 2015, the parents filed their first request for due process under Division of Administrative Hearings (DOAH) Case No: 15-2841E.  The matter was heard by Administrative Law Judge (ALJ) Jessica E. Varn.  There were four days of hearing in July and August 2015.

19. The ALJ ultimately found in favor of the student. ALJ Varn found that BCPS had improperly predetermined the student's placement.  In addition, ALJ Varn found that BCPS

had also committed procedural violations of the IDEA that resulted in the failure to provide the student with a free appropriate public education (FAPE), and further violations that the protections afforded to the student in disciplining the student for failing to hold a manifestation determination hearing.

20. The ruling however was not issued until after the 2015-2016 school year had begun. Although the student had successfully argued and won a motion to stay put before ALJ Varn, which would have allowed the student to remain in the school of choice, the parents decided to place C.B. at his home school for the 2015-2016 school year.

21. Prior to the start of the 2015-2016 school year, the parents met with the administration and the staff at the home school, Stephen Foster Elementary school (Stephen Foster). This was not a formal IEP meeting, but the parents were able to describe C.B.'s behavior and the patter of escalation. The parents were hoping to avoid the same problems with the use of discipline or excessive classroom removals that had occurred during prior school year.

22. C.B. entered Stephen Foster in August 2015, in the 2nd grade in a general education classroom.

23. School began and yet again, despite the meeting with Stephen Foster, C.B. was disciplined and removed from school during the first week of school. These removals continued throughout the entire school year and just as the choice school had, Stephen Foster began talking about removing the student from general education and placing him in an EBD cluster classroom. There were also the same statements being made that this student was not ASD but rather EBD.

24. Not only was the student removed from the classroom and the school building, but while on campus he was for the first time physical restrained by the staff. The restraints left

bruising on the student's arms and wrists and one time C.B. came home with a scratch on his eye.  The parents immediately objected to the use of restraint. Not only was it specifically not allowed on the behavior plan but C.B. was considered obese by the district and students who are obese should never be restrained until a medical doctor provides clearance for the use of restraint.  No medical clearance was ever sought, and the paperwork was unilaterally changed, over the parents' objections, to allow for restraint. The paperwork was changed after the student had already been restrained and injured several times by the staff at Stephen Foster.  Despite these injuries and the parents' objections, the paperwork was changed anyway. Once the paperwork was changed to allow restraint, the student was restrained regularly and often by the staff at Stephen Foster.  The parents' concerns and objections were disregard, making the parents participation in the process meaningless.

25. It is believed by the parents that BCPS believed the decision from Judge Varn would come out in the District's favor and that they would be able to transition C.B. into an EBD cluster classroom at his home school, since his homeschool had EBD cluster classrooms on their campus.

26. The decision by ALJ Varn came out in September 17, 2015.

27. The decision was squarely in favor of the student and as a result the district was not able to change eligibility to EBD or place the student in an EBD cluster program.

28. The predetermined plan to remove this student from the general education program and into an EBD cluster program however was already in motion despite Judge Varn's order.

29. The September order required BCPS to hold an eligibility meeting.  To date this has never occurred.  Despite repeated requests by the parents and meeting notices issued by the district, an eligibility meeting was never held.

30. Instead the district kept an EBD eligibility on all of the student's paperwork until a second ruling was issued by Judge Varn in December 2015 requiring the district to change the eligibility back to ASD.

31. The September order also required BCPS to hold a new IEP meeting after additional testing was completed.   A meeting that allowed the parents meaningful participation in the decision-making process.

32. Evaluations were completed in the early part of the 2015-2016 school year, yet an IEP meeting was not held until January 2016.

33. The parents objected to the new evaluations completed by BCPS.  Rather than allow the parents to obtain independent educational evaluations (IEE) the district initiated due process against the parents.

34. Over the summer of 2015, the district had honored the parents request for an independent educational evaluation (IEE) as it related to a Functional Assessment of Behavior (FBA).  The purpose of an FBA is to collect data to determine what might be causing the problem behaviors and then develop a plan to address those problem behaviors.  The plan that is developed is known in Broward as a Positive Behavior Intervention Plan (PBIP).

35. A private board certified behavior analyst (BCBA), who was approved by the district, was allowed into Stephen Foster to collect data and conduct a FBA.  The FBA was completed in October 2015.  The private BCBA was allowed to stay on and help BCPS draft the PBIP.

A new PBIP was developed and was scheduled to begin being implemented in December 2015.

36. Prior to the new plan being implemented, an old plan was being utilized. It was noted by the private BCBA and acknowledged by BCPS that the old plan was reinforcing the problem behaviors and thereby increasing the problem behaviors. There was an acknowledgment that it would take some time to see a decrease in the problem behaviors because the behaviors had been reinforced for so long by BCPS. C.B. had learned that if he misbehaved he would be removed from the classroom and most of the time sent home. The removal allowed him to get what he wanted – avoidance of doing an unwanted task – so he continued to misbehave to get out of doing or avoiding whatever it was he did not want to do at school.

37. Training and implementation of the new PBIP began in early December 2015.

38. The new PBIP specifically mandated that the student not be removed from the classroom for problem behaviors. This was done intentionally because removal was found to increase the problem behaviors.

39. On the second day of the plan, C.B. was removed from the classroom in direct contradiction to the plan. He was removed a second time before the winter break.

40. The new behavior plan was in place for nine (9) days before the winter break.

41. The behavior plan was in place for another eleven (11) days after winter break before it was unilaterally changed, over the parents' objection, to allow for the student to be removed from the classroom. The private BCBA also objected to this change stating that the plan had not been in place long enough to know if it would work. The other problem raised was that the student was being removed the entire time in direct contradiction to the

plan so it was impossible to know if it would have worked since it was never implemented with any fidelity.  Every time the student was removed, the problem behaviors were being reinforced.

42. On January 14, 2016, the district initiated due process against the parents in DOAH Case No. 16-257E. The case was assigned to Judge Varn.

43. On January 19, 2016, the IEP meeting that had been ordered by Judge Varn in September 2015, had finally begun.  The meeting that began in January was not concluded until March 2016.

44. During this time, C.B. was removed from the classroom, disciplined, restrained, secluded and isolated from his peers in both a trailer and an administrator's office.  During this time it was discovered that C.B. was being locked in a trailer and denied food and the use of a restroom.  During this time it was discovered that C.B. was being restrained even when no other students were present.  The parents objected.  Their objections were disregarded making their ability to participate in the process illusory at best.

45. During this time, discipline records were being produced that were misleading and false.  The parents objected to these records and requested corrections be made.  These requests were either ignored or denied or delayed so long as to be tantamount to a denial.  The refusal of BCPS to correct records denied the parents the ability to have meaningful participation in the process.

46. While the IEP team was meeting, unbeknownst to the parents, the Principal at Stephen Foster had submitted the package to the district's Behavior Intervention Committee which was a request to have C.B. unilaterally administratively removed from Stephen Foster and placed in an alternative school.

47. This administrative process is outside the scope of the IEP team and parents have no ability to participate in the process or appeal the decision made by the committee.

48. The committee is essentially a rubber stamp. And as is done with most requests, the request to have C.B. removed from Stephen Foster was granted on February 4, 2016.

49. On February 4, 2016, C.B. was told he was not allowed to return to school at Stephen Foster and that he must register at the alternative school, Pine Ridge.

50. On February 8, 2016, the parents filed a second due process case to stop the removal and placement of C.B. into the alternative school. DOAH Case No: 16-651E. This matter was assigned to a new ALJ, Judge Resavage.

51. The parents requested that this new case be transferred to Judge Varn and possibly consolidated into the IEE case (No. 16-257E). Both requests were denied without explanation.

52. The parents now have two matters pending before DOAH, in front of two different ALJs and are attending IEP meetings at Stephen Foster.

53. C.B. continues to be removed, disciplined, isolated and restrained over the parents' continued objections.

54. On February 22, 2016, the parents' motion for stay put to remain at Stephen Foster is granted. C.B. is allowed to stay at Stephen Foster.

55. The administration at Stephen Foster is furious.

56. A meeting is scheduled which the parents cannot attend. BCPS refuses to change the meeting to accommodate the parents. The parents file a motion with the ALJ asking for an order requiring the school to schedule a meeting in compliance with the IDEA at a time

and date convenient to the parents. The order is denied by ALJ Resavage and the meeting proceeds without the parents on March 1, 2016.

57. On March 3, 2016, the administration at Stephen Foster attempts to have C.B. arrested at school.  The police refuse to make the arrest. When the police refused to arrest C.B., the school issued C.B. an in school suspension for the following day.

58. On March 4, 2016, while C.B. was in in school suspension, alone and without any other students present, the administration at Stephen Foster, attempted to have C.B. Baker Acted or involuntarily committed to a hospital.  The hospital refused to accept C.B.

59. The hospital instead called the parents. When the parents arrived at the school the administration at Stephen Foster refused to allow K.B. to see her child or take him home.

60. It was only after a call from T.B., that K.B. was allowed to see C.B. and take him home.

61. Fearing for his safety, C.B. did not return to Stephen Foster.

62. Instead, C.B. was enrolled in private school.

63. The last time C.B. attended a BCPS was on March 4, 2016.

64. The school administration continued to ignore the PBIP and continued to remove, restrain, seclude and suspend this student.  In January 2016, they attempted to remove the student from the school through the administrative process.  When that failed, they attempted to arrest the student on March 3, 2016, and when that failed they attempted to have the student Baker Acted on March 4, 2016

65. On March 4, 2016, the Parent's request to transfer to another BCPS through the Public School McKay Transfer Process and the request was **denied.**

66. To date, the only place that C.B. can return to his Stephen Foster Elementary School Because the family and C.B. himself did not feel safe returning to Stephen Foster, on March

11, 2016, C.B. was withdrawn by his parents from Stephen Foster so that private school could be explored.

67. March 14, 2016 the final IEP meeting was held and once again the only placement offered to C.B. was in an EBD Cluster Classroom at Stephen Foster. Eligibility was never formally discussed, but it was clear from statements made that BCPS believed C.B. to be EBD rather than ASD.

68. Despite the court's order in September 2015, an IEP meeting to make changes to the IEP did not begin until January 2016.  Meetings were held on January 19, 20, February 3, 4, 8, 18 and March 14.  Another meeting was held without the parents on March 1, 2016. The meeting went forward on March 1st even though the parents told the district they were not available and made repeated requests that the meeting be moved to a mutually convenient date.  The district refused to move the meeting and proceeded without the parents, making changes to the behavior plan that the district knew the parents objected to and would not agree with had they been present.

69. On March 24, 2016, the second Due Process Case was filed.  Doah Case No; 16-1697E.

70. On March 31, 2016, a Motion to Consolidate was filed.

71. On April 1, 2016, an Order of Consolidation was filed in DOAH Case Nos.: 16-0651E and 16-1697E.

72. On April 21 and 22, 2016, the hearing on DOAH Case No.: 16-257E (IEE case was hearing in front of ALJ Varn).

73. The hearing in the consolidated cases of 16-651E and 16-1697E (1st and 2nd due process cases) began on May 3, 2016, and continued through May 6, 2016.  But the hearing was not concluded. The hearing was scheduled to continue on July 12, 2016.

74. On July 7, 2016, a decision in DOAH Case No.: 16-257E (IEE case) was rendered in the student's favor and ordered that a new psychoeducational evaluation could be conducted at the district's expense.

75. On July 12, 2016, the parties reconvened to continue the hearing. However, because of the ruling in Case No 16-257E (IEE case) this court and parties discussed the need to allow the new evaluation to take place and hold a meeting before the hearing in this matter continued. The court also encouraged the parties to discuss a global settlement. The parties agreed.

76. On July 13, 2016, an Order Placing the Case in Abeyance was entered. (Parties to advise status by August 1, 2016).

77. A few days later in July, the parents provided the district with the new Psychological Evaluation that completed by Gonzalez and Cassel. The parties agreed that the Gonzalez report, which was a comprehensive psychoeducational evaluation, would be utilized as the IEE in lieu of a new evaluation to the district for review as the evaluation had just been completed. The district agreed to accept this report in lieu of an IEE and reimburse the parents for the same.

78. On July 25, 2016, the parents gave the district consent to speak to Gonzalez and Cassel about this evaluation. Payment was withheld until the parents signed consent for the Respondent to speak to the evaluators. Despite consent being signed, the district never spoke to the evaluators.

79. And an IEP meeting was not scheduled before the start of the 2016-2017 school year as agreed to by the parents in the presence of this Court. It was not until motions were filed and hearing was held that finally at the behest of the ALJ, the district scheduled an IEP meeting for August 31, 2016.

80. On August 30, 2016, a strange and confusing notice was filed by Felicia Starke taking issue with the Gonzalez and Cassel report.

81. On August 31, 2016, the final IEP was held.

82. At the conclusion of the last IEP meeting, C.B. was once again placed in an EBD cluster classroom at Stephen Foster Elementary school.

83. Ultimately, it has not mattered how the student behaves or what information the parents provide to the school and the district, the decision to remove C.B. from the general education setting was already set and predetermined. This is a continuation of the district's attempt to remove the student from the general education setting since 2015. The parents continued to object to a placement in an EBD cluster program. The District's decision to remove this child from the general education was once again inappropriate – or in the alternative, premature.  Placement was once again predetermined. There was again no meaningful discussion regarding placement. The district has completely ignored the student's eligibility and medical diagnosis of an autism spectrum disorder (ASD) because staff working with the student do not believe he is autistic. Most telling is that the person in charge of everyone working on this matter is Dr. Mucenic. Dr. Mucenic testified against the parents in the 2015 due process case stating that C.B. was not ASD but rather EBD and that all the medical findings of ASD were wrong. Dr. Mucenic has authority over all the people handing this matter, including Felicia Stark.

84. On September 20, 2016, the third and final request for Due Process Hearing was filed in DOAH and case assigned DOAH Case No.: 16-5488E and set in front of ALJ Resavage.

85. On September 28, 2016, an Unopposed Motion to Consolidate DOAH Case No.: 16-5488 into Consolidated Case No.: 16-0651 was filed.

86. On October 11, 2016, an Order of Consolidation was entered in DOAH Case No.: 16-5488E.

87. The hearing finally resumed on January 24, 2017 and continued until January 27, 2016. The matter was not concluded and was reset again until March 2017.

88. The hearing resumed on March 28, 2017 and finally concluded on March 29, 2017.

89. To date, the only place that C.B. can return to his Stephen Foster Elementary School.

90. The district is the 6th largest in the United States. It has approximately 140 elementary schools. Stephen Foster Elementary School is not the only general education setting nor is it the only EBD cluster location in the district. The districts' refusal to allow this student to move to another school location is unreasonable, retaliatory and discriminatory.

91. Most disturbingly, when C.B. had begun to show real improvement in his behavior, the district unilaterally changed the behavior plan again, without the parents present and over the parents' objection. C.B.'s behaviors then began to increase. Thereby justifying the change in placement made on March 14, 2016 and August 31, 2016.

92. Retaliation stems from the parents' successful advocacy for their son. At the end of the 1st grade school year, the District unilaterally and improperly changed this student's eligibility and placement and improperly disciplined the student for his entire first grade school year. The matter went to an administrative hearing. On September 17, 2015, the hearing officer found that Broward County Public Schools improperly predetermined the student's placement, committed substantial procedural violations of the Individuals with IDEA that resulted in the failure to provide the student with a Free Appropriate Public Education (FAPE), and violated the protections afforded to the student in disciplining the student without holding a manifestation determination hearing. What became clear at the hearing

was the school district was increasing problem behaviors rather than properly addressing the problem behaviors. It was also established that the District had a clear predetermined plan to remove this student from the general education classroom setting.

93. The district has unsuccessfully been attempting to remove this student through the IEP process and under the IDEA, but to date has been unsuccessful. The district then attempted to remove the student through an administrative process. This effort also failed. The district was finally successful on March 14 and again on August 31, 2016. It did not matter what the parents said or asked, the district's decision to remove this student from the general education setting was already made, long before the March 14th meeting.

94. The actions and omissions of Broward County Public Schools and their staff constitute procedural and substantive violations of the IDEA resulting in a denial of FAPE. There is also clear evidence of retaliation and violations of Section 504 of the Rehabilitation Act.

95. This student has been punished using cruel and inhumane methods. The staff has not been properly or adequately trained. One behavior technician was seen on her cell phone instead of working with this student. Another behavior technician was seen making a game of throwing sticks with the student and then the student was suspended for throwing sticks.

96. The actions by the school and district defy logic.

97. The then 8-year-old child suffered humiliation, abuse and trauma.

98. The parents have lost time and money from work. The family has been adversely impacted not only financially but emotionally.

99. Again, no manifestation hearings were held despite the overwhelming number of days this student was out of the classroom, picked up early or suspended.

100.     During this time period, the parents felt repeatedly ambushed and blindsided by the district.

101.     The parents' input and opinions have not been considered by the district. They have been disregarded, ignored and marginalized.

102.     The IEP team members have wrote sworn statements, which contained inaccurate and even false information and information and opinions that were never shared with the parents or the entire IEP team for the sole purpose of having C.B. placed into an alternative school.

103.     Despite an adverse ruling against the district, despite the hundreds of hours of work done, despite the thousands and thousands of dollars spent on experts by both the district and the family, despite the fact that there were seven meetings held with the parents between January and March, four due process complaints filed during this time, the district continues to discriminate and retaliate against this student and his family.

104.     On August 17, 2017, a Final Order was issued, a copy of which is attached hereto as Exhibit "A" and incorporated *as if fully* set forth herein.

105.     The Final Order determined in part that BCPS's utilization of the Behavior Intervention Committee to change C.B.'s placement infringed on the parent's opportunity to participate in the decision-making process and thus was a substantive violation of the IDEA.

106.     The Final order found in part that placement in an EBD cluster classroom was appropriate and not predetermined, that the use of the Behavior Intervention Committee, Baker Act and Arrest were not retaliatory or discriminatory, and that the use of discipline, isolation and restraint were appropriate.

107.     T.B., K.B. and C.B. are aggrieved parties from the Final Order to the extent that placement in an EBD cluster classroom was found to be appropriate and the parent's proposed placement in a high functioning ASD classroom was found inappropriate.

108.     The Plaintiffs are further aggrieved parties from the Final Order to the extent that BCPS's interventions and actions were found to be appropriate and not retaliatory or discriminatory or a violation of the IDEA and/or Section 504 of the Rehabilitation Act.

109.     T.B, K.B. and C.B. have performed all conditions precedent prior to the filing of the instant action.

110.     T.B. and K.B. engaged the law firm of Langer Law, P.A. to represent them and are obligated to pay a reasonable fee for their services.


**COUNT 1**
**ATTORNEY'S FEES**

111.     T.B., K.B. and C.B. repeat and reallege the allegations in paragraphs 1 through 110 of the Complaint as if fully set forth herein.

112.          T.B., K.B. and C.B., are entitled to attorney's fees as prevailing party pursuant to:

    a.     20 U.S.C.§ 1415(i)(2)(B) and (i)(3)(B)(i)(I);

    b.     34 C.F.R. § 300.513;

    c.     § 1003.57, Fla. Stat.; and

    d.     Fla. Admin. Code R. 6A-6.03311(9).

113.          Plaintiffs seek compensation for counsels' services performed and costs in the administrative hearing.

WHEREFORE, T.B. and K.B., individually and on behalf of C.B, demand judgment against the Board for attorney's fees, costs, and interest incurred in pursuing their legal rights.

## COUNT 2
## VIOLATION OF FAPE – IDEA - BOARD

114.     T.B., K.B. and C.B. repeat and reallege the allegations in paragraphs 1 through 110 of the Complaint as if fully set forth herein.

115.     C.B. is entitled to a free and appropriate public education ("FAPE")  pursuant to:

      a.   20 U.S.C.§ 1400 *et seq.;*

      b.   §1003.57(5), Fla. Stat.; and

      c.   Fla. Admin. Code R. 6A-6 *et seq.*

116.     As a result of the denial of FAPE, C.B. has sustained loss of educational benefit and T.B. and K.B. have incurred expenses to provide educational and related services to C.B.

WHEREFORE, T.B. and K.B., individually and on behalf of C.B, request enforcement of the Final Order that determined that there was a violation of the IDEA and demand judgment against the Board and requests this court to enter an Order for the Board to:

    (1) reimburse the expenses incurred by T.B. and K.B. for educational and related services;

    (2) develop an appropriate IEP for C.B. in the Least restrictive environment or in the alternative payment of private school;

    (3) develop an appropriate BIP that does not contain the use of restraint;

    (4) pay for additional evaluations and assessments in the form of independent educational evaluations;

    (5) provide any necessary tutoring or other compensatory education;

    (6) pay the reasonable costs and attorney's fees incurred by T.B.

and K.B.;

together with such further relief as the court deems just and equitable.

## COUNT 3
## CIVIL RIGHTS – PROCEDURAL DUE PROCESS

117.    T.B., K.B. and C.B. repeat and reallege the allegations in paragraphs 1 through 110

of the Complaint as if fully set forth herein.

118.    Pursuant to IDEA and the Florida law implementing IDEA, BCPS had a duty to

provide T.B. and K.B. with procedural safeguards, including:

  a.    copies of C.B.'s educational records in a timely manner;

  b.    hold IEP meetings a mutually convenient date and time;

  c.    failure to develop an IEP for C.B;

  d.    failure to develop an BIP for C.B;

  e.    failure to implement an appropriate IEP;

  f.    failure to implement an appropriate BIP;

  g.    predetermined placement in an EBD cluster;

  h.    refusal to correct misleading and incorrect educational records;

  i.    failure to hold an eligibility meeting;

  j.    improper use of restraint;

  k.    improper use of arrest;

  l.    improper use of Baker Act;

  m.    improper isolation;

  n.    improper seclusion;

  o.    improperly withholding food and the use of the restroom;

  p.    failure to allow the parent's meaningful participation;

119.    BCPS failed to timely produce records requested.

120.    BCPS failed to provide T.B. and K.B. with prior written notices

requested.

121.      BCPS failed to develop an IEP.

122.      BCPS failed to develop a BIP.

123.      BCPS failed to implement an appropriate BIP.

124.      BCPS failed to implement an appropriate IEP.

125.      BCPS attempted to Baker Act (involuntary commit) C.B. improperly and for the purposes of removing C.B. from the school setting.

126.      BCPS attempted to arrest C.B. improperly and for the purposes of removing C.B. from the school setting.

127.      BCPS improperly utilized restraint on C.B.

128.      BCPS improperly isolated C.B. from his peers.

129.      BCPS improperly secluded C.B. from his peers.

130.      BCPS improperly withheld food from C.B.

131.      BCPS improperly withheld the use of the restroom from C.B.

132.      BCPS did not comply with the procedural requirements for the development of an appropriate IEP.

133.      BCPS did not comply with the procedural requirements for the development of an appropriate BIP.

134.      BCPS did not develop the proposed IEP jointly with T.B. and K.B.

135.      BCPS failures deprived T.B. and K.B. of their right to procedural due process under the United States and Florida Constitutions.

136.      By violating T.B., K.B. and C.B.'s constitutional rights, BCPS deprived T.B., K.B. and C.B. of their civil rights pursuant to 42 U.S.C. § 1983.

137.      As a result of the deprivation of their civil rights, T.B., K.B. and C.B. have been damaged.

WHEREFORE, T.B. and K.B., individually and on behalf of C.B., demand judgment against the Board for damages, together with their attorney's fees and costs pursuant to 42 U.S.C §1988, and such further relief as the court deems just and equitable.

## COUNT 4
## DE NOVO REVIEW

138.     T.B., K.B. and C.B. repeat and reallege the allegations in paragraphs 1 through 110

of the Complaint as if fully set forth herein.

139.     T.B., K.B. and C.B. are entitled to de novo review of those parts of the Final Order

for which they are aggrieved parties.

WHEREFORE, T.B. and K.B., individually and on behalf of C.B, request a *de novo* review

of the Final Order and demand judgment against the Board and requests this court to enter an

Order for the Board to:

   a.    reverse the decision of the ALJ and determine that placement in an EBD
         cluster classroom is inappropriate and that T.B.'s and K.B's proposed
         placement in a high functioning autism classroom is appropriate for
         C.B.;

   b.    reverse the decision of the ALJ and determine that the overuse of
         discipline was a violation of Section 504 of the Rehabilitation Act which
         deprived C.B. of instructional time in the classroom setting;

   c.    reverse the decision of the ALJ and determine that the use of arrest and
         Baker Act were retaliatory and discriminatory;

   d.    Reverse the decision of the ALJ and determine that the use of discipline
         was inappropriate;

   e.    Reverse the decision of the ALJ and determine that the placement
         decision was predetermined;

   f.    Reverse the decision of the ALJ and determine that the use of the
         Behavior Intervention Committee was discriminatory and retaliatory;

   g.    reverse the decision of the ALJ and determine that the procedural
         violations were a denial of FAPE;

   h.    reimburse the expenses incurred by T.B. and K.B. for educational and
         related services;

i.  award compensatory education to make up for the time lost from classroom instruction;

j.  develop an appropriate IEP for C.B. in the least restrictive environment;

k.  develop an appropriate BIP for C.B. that does not include the use of restraint; and

l.  pay the reasonable costs and attorney's fees incurred by T.B. and K.B.;

together with such further relief as the court deems just and equitable.

## JURY DEMAND

T.B. AND K.B., INDIVIDUALLY AND ON BEHALF OF C.B, DEMAND A TRIAL BY JURY FOR ALL ISSUES TRIABLE AS OF RIGHT BY A JURY.

Dated this 15th day of November, 2017,

     LANGER LAW, P.A.
     15715 S. Dixie Highway
     Suite 405
     Miami, Florida 33157
     Telephone: (305) 901-6277
     Facsimile (305) 901-6275

     /s Stephanie Langer

     Stephanie Langer, Esq.
     Fla. Bar # 149720
     Email: slanger@langerlawpa.com
     *Attorneys for Plaintiffs*